IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CYNTHIA ANN COLLINS, et al., } | |
| } | |
|     Plaintiffs, } | |
| } | CIVIL ACTION NO. |
| v. } | 08-AR-1267-S |
| } | |
| DOLLAR TREE STORES, INC., } | |
| } | |
|     Defendant. } | |

**MEMORANDUM OPINION**

This case comes before the court on the motion of plaintiffs, Cynthia Collins and Beryl Dauzat,[1] who sue on behalf of themselves and other similarly situated employees (collectively "plaintiffs"), to facilitate notice, pursuant to the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d) to all female individuals holding the position of "store manager" within the last three years at employer-defendant, Dollar Tree Stores, Inc. ("Dollar Tree"). The named plaintiffs and the putative class are current and former store managers of Dollar Tree. They claim that Dollar Tree discriminated against them based on gender by paying them less than

---

[1] Cynthia Ann Collins and Beryl Dauzat are also named plaintiffs in an another pending action against Dollar Tree. *Knott et al. v. Dollar Tree Stores, Inc.*, 06-1553 (N.D. Ala. 2006)(Lead Case), consolidated with *Richardson et. al v. Dollar Tree Stores, Inc.*, 08-693 (N.D. Ala. 2008)(Member Case). *Knott* arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* In *Knott*, plaintiffs allege that Dollar Tree "had a uniform policy and practice of consistently requiring its Store Managers to work over 40 hours a week for a salaried amount without overtime compensation." *Knott* Complaint at ¶ 5. The same attorneys who represent the plaintiffs in *Knott* represent the plaintiffs in the instant action.

1

their male counterparts. Plaintiffs seek court-ordered facilitation of notice without prior discovery. The court will treat plaintiffs' motion as a motion for conditional class certification, believing that such is required for notification. Defendants oppose notification without discovery and request ninety days of discovery for the purpose of determining, *inter alia*, the scope of and need for class treatment. On November 14, 2008, the court set a scheduling conference for November 21, 2008, concerning the parties' Rule 26(f) Report of Parties' Planning Meeting ("Rule 26(f) report"). The purpose was to resolve disputed timelines contained in the Rule 26(f) report. On November 19, 2008, plaintiffs filed their current motion to facilitate notice. On November 21, 2008, the court heard oral argument with respect to the Rule 26(f) Report *and* to the motion to facilitate notice. On November 25, 2008, Dollar Tree filed a brief in opposition to plaintiffs' motion, largely memorializing their prior oral argument. Dollar Tree contends that EPA claimants cannot complain about unequal pay outside of their own physical Dollar Tree premises, which constitutes the "establishment" under EPA terminology. For the following reasons, the plaintiffs' motion will be granted by separate order. The court will also enter a separate scheduling order.

### *I. Facts*

The original plaintiffs, Cynthia Ann Collins ("Collins") and

Beryl Dauzat ("Dauzat"), filed their complaint on July 17, 2008. Since then, 155 persons have filed consent forms opting into the action.[2] Each of these consent notices declares that the new plaintiffs work/worked as a store manager and was "paid less than male [s]tore [m]anager(s) who performed work requiring equal skill, responsibility, and effort under similar working conditions . . . ." In addition, each plaintiff provided information (when equipped with such knowledge) concerning which Dollar Tree store(s) she managed, the period of service at that location(s), and her last rate of pay. Plaintiffs have worked, or are currently working, at Dollar Tree stores in **at least thirty-five states**. In their consent forms, some plaintiffs undertake to explain their decision to opt-in. For example, Pamela R. Kennedy states: "I was told by several of my district managers it didn't matter how well I did my job I was a woman and I didn't deserve as much as a man and should be happy with what I got." Doc. 11-2. Opt-in plaintiff, Tiffany A. Herring, adds to her consent form: "I was the District's Store Manager Trainer therefore I know for fact [sic] men were paid more than women!" Doc. 13-2.

## II. Applicable Law

### A. "Establishment"

The EPA, an amendment to the Fair Labor Standards Act

---

[2] In fact, 156 plaintiffs have filed consent forms to opt-in. However, two of the plaintiffs, Shelly Welch and Lola Gillard, filed their consent forms in error and were thus dismissed.

("FLSA"), 29 U.S.C. § 201 *et seq.*, provides in pertinent part:

> No employer having employees subject to any provisions of this section shall discriminate, **within any establishment** in which such employees are employed, between employees on the basis of sex by paying wages to employees **in such establishment** at a rate less than the rate at which he pays wages to employees of the opposite sex **in such establishment** for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

28 U.S.C. § 206(d)(emphasis supplied; italics in original). Section 206(d) expressly applies to FLSA § 216(b), which allows for a collective right of action and the recovery of certain damages. 29 U.S.C. § 216(b).

The Secretary of Labor has defined the term "establishment" as "a distinct physical place of business rather than . . . an entire business or 'enterprise' which may include several separate places of business." 29 C.F.R. § 1620.9(a). Absent "unusual circumstances," the court presumes that multiple locations do not constitute a single establishment. *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1017 (11th Cir. 1994). Section 1620.9(b) states in pertinent part:

> **[U]nusual circumstances** may call for two or more distinct physical portions of a business enterprise being treated

> as a single establishment. For example, a central administrative unit may hire all employees, set wages, and assign the location of employment; employees may frequently interchange work locations; and daily duties may be virtually identical and performed under similar working conditions.

29 C.F.R. § 1620.9(b)(emphasis supplied). As interpreted by the Eleventh Circuit, the "hallmarks of [unusual circumstances] are centralized control of job descriptions, salary administration, and job assignments or functions." *Mullhall v. Advance Sec., Inc.*, 19 F.3d 586, 591 (11th Cir. 1994)(citation omitted).

### B. Desire to Opt-In & Similarly Situated

It is within the court's discretion to grant or deny a motion to conditionally certify and facilitate notice. *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562 (11th Cir. 1991). In *Dybach*, the Eleventh Circuit held that, before facilitating notice, "the district court should satisfy itself that there are other employees . . . who **desire to 'opt-in'** and who are **'similarly situated'** with respect to their job requirements and with regard to their pay provisions." *Id.* at 1567-68 (emphasis supplied). These are the general requirements recognized by the Eleventh Circuit. Subsequently, the Eleventh Circuit slightly altered *Dybach's* two-tiered approach. *See Hipp v. Nat'l Life Ins. Co.*, 252 F.3d 1208 (11th Cir. 2001)*, and Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240 (11th Cir. 2003). In *Cameron-Grant*, the court stated:

5

> *Hipp* outlined a two-tiered procedure that district courts **should use** in certifying collective actions under § 216(b), stating as follows:
>
> The first determination is made at the so-called "notice stage." At the **notice stage**, the district court makes a decision-usually based only on the pleadings and any affidavits which have been submitted-whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a **fairly lenient standard**, and **typically results in "conditional certification" of a representative class**. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a **motion for "decertification"** by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives-i.e. the original plaintiffs-proceed to trial on their individual claims.

*Id.* at 1243 n.2 (quoting *Hipp*, 252 F.3d at 1218)(emphasis supplied). The Fifth Circuit has observed, that "[a]t the notice stage, courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." *Mooney v. Aramaco Servs. Co.*, 54 F.3d 1207, 1214 n.8 (5th Cir. 1995)(citation omitted), *overruled on other grounds*

6

by *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S. Ct. 2148 (2003). Therefore, certification, if granted at the preliminary notice stage, is always conditional.

### III. Analysis

#### A. Establishment

At oral argument and in its subsequent brief, Dollar Tree stresses that plaintiffs will never be able to present themselves as a class entitled to the protections of the EPA because they can never overcome the threshold requirement of "establishment," and therefore, that they cannot demonstrate that the class members are "similarly situated." Both of these elements are required by *Dybach* and its progeny. Dollar Tree agrees to limit its preliminary discovery evidence relevant to whether or not plaintiffs are, in fact, part of a single "establishment." Plaintiffs respond that they fully expect to be able to establish the "unusual circumstances" exception, but that discovery on that and other issues can and should take place only after preliminary notice to the putative class.

With some trepidation, the court agrees with plaintiffs that the "unusual circumstances" exception is broad enough potentially to make "establishment" encompass more than one physical Dollar Tree location. *See Meeks*, 15 F.3d at 1017. Dollar Tree is, unfortunately for it, correct in contending that the court will only be able to determine whether or not "unusual circumstances" exist after discovery. Although the court agrees with Dollar Tree

7

that discovery prior to facilitation of notice could perhaps clarify this issue and put an early brake on the case, the court concludes that the resolution of this issue is better left to a motion for decertification after some discovery.

Dollar Tree is not correct in its assertion that the "establishment" question is necessarily a dispositive "threshold" issue. It is a timing issue. As plaintiffs pointed out during oral argument, it is Dollar Tree that possesses most of the evidence relevant to the issue, e.g., job descriptions and salary information. Plaintiffs rightfully point out that Dollar Tree has the pertinent information. Whether Dollar Tree's request for a delay of notice is intended to inhibit claims by would-be, opt-in plaintiffs need not be decided at this juncture. Plaintiffs say that Dollar Tree's purpose in requesting pre-notice discovery is to allow the statute of limitations to run against would-be plaintiffs, keeping the lid on any expansion of the putative class. Dollar Tree responds by saying that it is only attempting to root out spurious claims and to promote judicial economy. If the court should allow pre-notice discovery, Dollar Tree might very well discover evidence that would head off the addition of spurious claims. However, Dollar Tree will have ample opportunity in a motion for decertification to eliminate such claims. During the inevitable decertification hearing, the court will be able to subject opt-in plaintiffs to strict scrutiny under a much more

developed factual record. The court does not think the need for judicial economy overcomes the possible prejudice to would-be plaintiffs if notification is delayed.

2. *Desire to Opt-In & Similarly Situated*

At the notice stage, the court looks only to what the parties have filed. At oral argument, plaintiffs stated that there are approximately 3500 Dollar Tree stores in the United States, employing potentially one or two managers each. Therefore, potentially, the putative class could be as large as 7000, or possibly larger, considering that plaintiffs want to notify all female Dollar Tree store managers who held the position over the last three years. For the sake of argument, assuming that the number is 7000, currently around two percent of the putative class has already opted-in. Of course, the larger the percentage, the easier it is for the court to reach a judgment as to the desire of other plaintiffs to opt-in. Two percent, standing alone, might not be enough to persuade the court that it is likely that other store managers will opt-in. However, the court finds that two percent, coupled with former/current store managers in at least thirty-five states, and particularized averments by certain plaintiffs, provide the court with sufficient reason to believe there are other Dollar Tree store managers who may want to opt-in. Assuming that plaintiffs' allegations are true, the unequal pay of women is pervasive throughout the United States to warrant class treatment.

9

Thus, the court finds that plaintiffs probably exist who deserve notice and would not therefore know of their rights.

Plaintiffs, also allege, as they must, that members of the collective action are similarly situated. They aver that:

> [t]he duties and responsibilities of an [sic] Store Manager at Dollar Tree are the same and require equal skill, effort and responsibilities under similar working conditions regardless of the geographic location of the store (rural or urban), the physical size of the store, or the amount of sales generated by a store, or any other factor other than sex.

Complaint at ¶ 8. Dollar Tree denies these allegations by plaintiffs. While the allegations are rather conclusory, for the same reasons discussed in the "establishment" section, *supra*, the court will leave the question of "similarly situated" for a motion for decertification.

### *IV. Conclusion*

For the foregoing reasons, plaintiffs' motion to facilitate notice and for a conditional nationwide collective action will be granted by separate order. In addition, a separate scheduling order will be entered.

DONE this 12th day of December, 2008.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE